IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **RACHEL MYRICK** | § § § | |
| VS. | § § § | **CIVIL ACTION NO. 2:22-cv-370**<br>**JURY DEMAND** |
| **TEXAS STATE TECHNICAL COLLEGE** | § § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Rachel Myrick ("Myrick"), for her claims for relief against Texas State Technical College ("TSTC"), alleges and states:

### INTRODUCTION

1. Plaintiff Myrick brings this action vindicate her rights under Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 et seq., (hereinafter "Title IX") to be free from retaliation for reporting an allegation of sexual misconduct on the part of another employee of TSTC. Myrick seeks all relief to which she is entitled under the applicable statues.

### PARTIES

2. Plaintiff, Rachel Myrick, is an individual residing in Marshall, Texas.

3. Defendant, TEXAS STATE TECHNICAL COLLEGE ("TSTC") has continuously been and is now a college operating in Marshall, Texas. Defendant's Provost at the Marshall campus is Barton Day at 2650 East End Blvd., Marshall, TX 75672 where TSTC may be served.

### JURISDICTION

4. Jurisdiction is based on 19 U.S.C. §§ 1331.

## VENUE

5.       Venue is proper in this judicial district because the occurrences giving rise to the claims for relief asserted occurred in this judicial district, Myrick is a resident of this judicial district.

## BACKGROUND FACTS

6.       Plaintiff Myrick was the Retention Service Coordinator with the Advocacy and Resource Center at TSTC in Marshall. In addition, Myrick was the Interim Housing Director. It was her job to dispense Cares Cases to other ARC personnel, complete her own cases and assist students with their basic needs which could be food, housing, clothing, vehicle repairs, books, tools, etc. Myrick's job was also to assist the students in anything they needed assistance with, even if it's just being there to talk. Myrick was known as the "Campus Mom".  In December 2021, Myrick was awarded the highest raise and bonus possible for her position.

7.       In the summer of 2022, Myrick also was getting students ready for the Fall semester, finding out which students were staying, which were going and taking applications, completing background checks and getting students set up for their new apartments. Myrick was working 60+ hours a week to get housing ready.

8.       Sometime in July a male student aged 21 came into Myrick's office to talk, like many other students and he told her that a female employee of TSTC aged 48 had sent him a message on Facebook Messenger and told him if he ever needed to talk that he could call her, and she gave him her phone number and also stated that they should have lunch sometime. The student told Myrick he thought it was odd that the older female employee would be messaging him about calling her and inviting him to lunch.

9. Myrick asked the male student if he wanted to file a Title IX complaint against the older female employee of TSTC and he told Myrick that he didn't think she meant anything by it. Myrick also asked him if he would like for her to file the complaint and he said no, that he didn't think there was anything behind it.

10. After that conversation it had been bothering Myrick because she didn't know what should be done regarding the actions of the older female employee of TSTC and the male student. Myrick spoke to Angela Bross, the TSTC Psychologist, and she wasn't sure what Myrick should do with regards to it either, so she asked Jaimee Quaid, Human Resources, for her opinion. Quaid wasn't sure what should be done, told Myrick that she would check into it and get back to her. This conversation occurred on Saturday, Aug 6, 2022.

11. On Monday Aug 8, 2022 in the later part of the afternoon, Jaimee Quaid came to Myrick's office to inform her that she had to file the Title IX against the older female employee and if she didn't then she would lose her job. On August 9, 2022, based on the directive from Quaid, Myrick filed a Title IX complaint regarding the incident between the older female TSTC employee and the male student after informing her boss Balinda Palomino that she was going to have to file the Title IX complaint. Myrick did not name the student in the complaint because the student did not want her to file the complaint.

12. After she filed the Title IX complaint, Myrick received a call from Griselda Sanchez regarding the complaint. Myrick recounted the story regarding the male student and the older female employee of TSTC and she asked her to identify the student's name. Myrick told her she would like to keep it confidential. Sanchez told Myrick that she would most likely be required to identify the student as part of the complaint. Myrick had informed the student that she may have to give up his name with regards to the issue, that Miss Charla was under investigation.

13. On Friday August 12, 2022, Myrick received a hangout message from Melissa Aleman in HR wanting to meet at 10:00 a.m. When Myrick arrived to her office and turned on the video meeting Aleman told Myrick to tell her the name of the student involved in the Title IX complaint. Myrick tried to explain to her the reason why she did not want to give up the student's name, when Aleman started threatening her to with regards to her job. Aleman told Myrick that she would make sure that she would lose her job if she did not tell her the name of the male student who was the subject of the Title IX complaint. Myrick then told her the student's name and ended the meeting.

14. After the conversation with Aleman, Myrick informed her campus group that she needed to take a moment and that she would return around 1:00 p.m. that afternoon because the incident with Aleman so upsetting to her. Myrick also contacted Angela Bross, the TSTC Psychologist to inform her on what had happened as well.

15. On August 15, 2022, Myrick went into Jaimee Quaid's office to talk about her conversation Aleman and how she did not appreciate having her job threatened over the Title IX complaint. Myrick felt as if Quaid was sticking up for Aleman the entire time she was in there. Myrick then reached out to Christine Steward-Carithers and Patrick Joseph to talk to them about the Title IX report. Patrick told her he would speak to her the next day which was the 16th. Myrick informed him about how Aleman spoke to her and he informed her that they are mandated reporters and Myrick told him she understood that, but the message wasn't sexual in nature or harassing, just probably not appropriate, that her issue was being threatened multiple times with regards to her job regarding it. Myrick told him people won't file the reports if they are being threatened for trying to do the right thing. Then he asked her when the student told her and she told him she wasn't really

sure what day, she just put the 14th but it could've been later. He told her she could file a complaint against Aleman and Myrick told him she didn't want to but someone should speak to her.

16. On Thursday August 19, 2022, Myrick was summoned to a meeting at the admin office and met with Jaimee Quaid and Balinda Palomino (via video). Myrick was informed that she was bring terminated for unsatisfactory job performance. Prior to her termination, Myrick had received no disciplinary action regarding her job performance.

17. Since her termination, Myrick has been struggling with serious depression. Myrick has also suffered a loss of wages and benefits as a result of her termination.

## CLAIMS FOR RELIEF

### I
### FIRST CLAIM FOR RELIEF
### (RETALIATORY DISCHARGE IN VIOLATION OF TITLE IX)

18. Myrick incorporates the allegations set forth above in paragraphs 1 through 17.

19. Discrimination on the basis of sex, including sexual harassment and retaliation for reporting sexual harassment is prohibited by Title IX.

20. Myrick engaged in protected activity when she made a report of alleged activity made illegal by Title IX.

21. There is a causal link between the TSTC's dismissal of Myrick and this protected activity.

22. Myrick's protected activity was the cause or a motivating factor in these adverse employment decisions.

### DAMAGES

23. Myrick incorporates the allegations contained in paragraphs 1 through 22 above, as if fully set forth.

24. As a result of the TSTC's actions, Myrick has suffered economic damages, including but not limited to, lost wages and other benefits in connection with her employment.

25. As a result of TSTC's actions, Myrick has suffered emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life. Myrick is, therefore, entitled to compensatory damages.

26. The TSTC's actions were done with malice or reckless indifference to Myrick's federally protected rights. Myrick is therefore, entitled to punitive damages.

27. Myrick also seeks recovery of attorney fees and costs of suit.

## JURY TRIAL DEMAND

28. Myrick demands a jury trial of the claims raised in this complaint.

## PRAYER FOR RELIEF

WHEREFORE, Myrick prays for the following relief:

a) Judgment against defendant for actual damages attributable to lost wages in the past, lost wages in the future, loss of retirement, medical and other benefits in the past and future, mental anguish, concern, worry and inconvenience in the past and future, and consequential damages.

b) Exemplary damages against the defendant in a sum determined by the trier of fact.

c) Reinstatement to her former position and injunctive relief.

d) Prejudgment interest as provided by law.

e) Post-judgment interest as provided by law.

f) Costs of suit, including a reasonable attorney's fee.

    g)    Such other and further relief to which plaintiff may be justly entitled.

        Respectfully submitted,

/s/ *William S. Hommel, Jr.*
William S. Hommel, Jr.
State Bar No. 09934250
bhommel@hommelfirm.com
Hommel Law Firm PC
5620 Old Bullard Road, Suite 115
Tyler, Texas 75703
903-596-7100 Telephone/Facsimile

ATTORNEY FOR PLAINTIFF